**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| | * |
| **JAMES BOWERS,** *et al.*, | * |
| | * |
| **Plaintiffs** | * |
| | *    **Civ. No.: MJM-24-620** |
| **v.** | * |
| | * |
| **LEGUM & NORMAN REALTY, INC.,** | * |
| | * |
| **Defendant.** | * |
| | * |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**MEMORANDUM**

Plaintiffs James Bowers and Jacqueline Bridgett (collectively, "Plaintiffs") filed this civil action against defendant Legum & Norman Realty, Inc. ("Defendant") alleging violations of the Maryland Mortgage Fraud Protection Act ("MMFPA") and Maryland Consumer Protection Act ("MCPA"). ECF No. 1 (Compl.). The Court has original jurisdiction pursuant to 28 U.S.C. § 1332. Currently pending are Defendant's Motion to Dismiss, ECF No. 13, and Plaintiffs' Motions for Leave to File Surreplies, ECF Nos. 16, 18. The motions are fully briefed. No hearing is necessary to resolve them. *See* Local Rule 105.6 (D. Md. 2023). Plaintiffs' motions shall be granted, and, for reasons explained below, Defendant's motion to dismiss shall be denied, except as to Plaintiffs' claim for conspiracy, which shall be dismissed without prejudice.

I.     **BACKGROUND**

    **A.  Factual Background**

The following facts are drawn from Plaintiffs' Complaint (ECF No. 1). The Garden Condominium I ("GCI") and The Garden Condominium II ("GCII") were residential

1

condominiums located at Sunset Island, Ocean City, Maryland. Compl. ¶¶ 1, 2. Constructed between 2004 and 2010, GCII consists of five garden-style buildings containing 102 units. *Id.* ¶ 3. Plaintiffs purchased a condominium unit in GCII for $520,000. *Id.* ¶¶ 1, 3, 4. The contract of sale was ratified on August 29, 2022, and closing was held on October 17, 2022. *Id.* ¶ 3.

Defendant provides professional property management services to condominiums and homeowner associations ("HOAs"), including financial and facilities management, and has served as the property manager for GCI and GCII since January 31, 2018. *Id.* ¶ 5. Defendant's duties include "attending all Board meetings, preparing Condominium Resale Certificates, and since January 1, 2022, completing the Federal National Mortgage Association ("Fannie Mae") Form 1076 Condominium Project Questionnaire submitted by mortgage lenders to Fannie Mae to establish loan eligibility for purchase of the mortgage by Fannie Mae." *Id.*

### 1. History of Construction Defects and Water Infiltration at Sunset Island

In 2005, the Councils of Unit Owners of GCI and GCII became aware of design and construction defects in the GCI and GCII buildings. *Id.* ¶ 7. In 2010, claims were asserted against the builder and developer for damages and defects involving water infiltration issues in common elements of the buildings. *Id.* The condominium boards for GCI and GCII entered into a settlement agreement, holding the builder harmless for all future claims, including claims for latent defects and claims arising out of repairs made by the builder. *Id.* In the years to follow, more construction problems came to light, requiring further repair. *Id.* ¶ 8.

In 2016, the boards of GCI and GCII hired Restoration Engineering, Inc. ("REI") to perform a structural evaluation of the buildings. *Id.* ¶ 9. REI investigated and prepared a report and summary letter noting extensive construction deficiencies. *Id.* In a letter authored by the president of REI dated November 2, 2017, REI noted numerous architectural and structural deficiencies to

the stair towers. *Id.* ¶ 10. Structural deterioration was so extensive that emergency work was required to prevent collapse of the stair tower structures. *Id.* REI also determined that all Juliet balconies had significant structural deficiencies and required extensive repairs. *Id.* Defendant received this report shortly after becoming the property manager for GCI and GCII. *Id.* The letter noted that REI expected to discover additional evidence of deficiencies. *Id.*

### 2. Special Assessment

On December 1, 2017, the GCII Unit Owners approved a special assessment for $11,307.36 per unit owner to fund the repair and remediation of water encroachment in the stairwells and to correct other deficiencies. *Id.* ¶ 11.

Less than two years later, GCII announced another special assessment. *Id.* ¶ 17. Defendant mailed a letter dated August 16, 2019, to each unit owner in GCI and GCII providing notice of a special meeting to be held on September 21, 2019, for the purpose of approving the special assessment. *Id.* The letter stated that the purpose of the special assessment was to "pay for repairs to the common elements consisting primarily of the stair towers, and walls, walkways, decks and roof trusses . . . ." *Id.* It explained that there was significant water damage affecting the structural integrity of the buildings and subsequent inspections revealed other code deficiencies. *Id.* ¶ 18.

Before the special meeting, an information session for unit owners was held with REI and Defendant present to explain the scope of work. *Id.* ¶¶ 20–21. The unit owners and Defendant were informed that the repairs were to be completed in three phases, with the reconstruction of each building's two stair towers to be the priority. *Id.* ¶ 22. Urgent structural repairs were also needed for the end walls, walkways, decks, and roof trusses. *Id.*

During the meeting on September 21, 2019, unit owners voted to approve the special assessment covering the first phase of the three-phase repair project. *Id.* ¶ 23. Each GCII unit owner was assessed $39,847. *Id.*

### 3. Surfside Condominium Collapse and Related Fannie Mae Actions

On June 21, 2021, in Surfside, Florida, the Champlain Condominium South Tower ("Surfside Condominium") collapsed, killing 98 occupants. *Id.* ¶ 24. Later investigation revealed that the Surfside Condominium had long-term unrepaired structural defects. *Id.* Following the collapse, Fannie Mae and Federal Home Loan Mortgage Corporation ("Freddie Mac") promulgated new requirements for issuing mortgages on units in condominiums. *Id.* Under a new requirement that became effective on January 1, 2022, "Fannie Mae and Freddie Mac must vet condominiums for their 'overall safety, soundness, structural integrity, and habitability.'" *Id.*

"Most private mortgage lenders issue mortgages with the intent to sell those mortgages to Fannie Mae or Freddie Mac. Because Fannie Mae and Freddie Mac only purchase mortgages that meet their requirements, private mortgage lenders typically do not approve mortgages or refinancing of condominium units unless Fannie Mae and Freddie Mac's lending requirements are satisfied." *Id.* ¶ 25. Therefore, most private mortgage lenders "conform their lending requirements to comply with Fannie Mae and Freddie Mac's lending requirements which are thereby applicable to nearly all residential mortgages." *Id.* ¶ 26.

Plaintiffs allege that in response to the Surfside Condominium collapse and concerns with aging infrastructure and projects with deferred maintenance, Fannie Mae issued condominium eligibility requirements designed to manage risks and protect borrowers from physically unsafe or financially unstable projects. *Id.* ¶ 27 (quoting Fannie Mae Selling and Servicing Archives, *Fannie Mae*, https://perma.cc/62ZF-W5SL). The Fannie Mae Lender Letter, dated October 13, 2021,

explained the rationale for the new requirements and stated that they "apply to all loans secured by units in projects with five or more attached units, regardless of the type of project review or review waiver." *Id.* ¶ 28 (quoting Lender Letter (LL-2021-14), *Fannie Mae* (Oct. 13, 2021), https://perma.cc/BYY5-KF4Z) ("Lending Letter"). The new requirements "essentially require that the condominium board members or property manager certify that the property is structurally sound." *Id.*

The Lending Letter stated that "Loans secured by units in condo and co-op projects with significant deferred maintenance . . . are not eligible for purchase . . . [and] will remain ineligible until the required repairs have been made and documented." *Id.* ¶ 29 (quoting the Lending Letter). "Fannie Mae specified that lenders are responsible for determining that condominium projects meet the requirements and must certify that all Fannie Mae eligibility requirements have been met." *Id.* ¶ 30. Fannie Mae created the Form 1076 Condominium Project Questionnaire ("Form 1076") for "the mortgage lender to gather information to determine eligibility for mortgage financing purchases." *Id.* ¶ 31. Form 1076 directs the mortgage lender to send it to the condominium's HOA or management company and to be returned to the lender once completed by an authorized representative of the HOA. *Id.* ¶¶ 32, 34. Form 1076 was added in December 2021 and consists of eight pages with twelve questions, including questions about the building's safety, structural integrity, habitability, and any repairs recommended or completed. *Id.* ¶ 33.

### 4.  Form 1076

Plaintiffs allege that between January 1, 2022, and August 29, 2022, Defendant completed the Form 1076s it received from lenders with materially false information and "deliberately omitted and failed to disclose responsive information and documents." *Id.* ¶ 35. If Defendant had truthfully completed the first Form 1076 it received after January 1, 2022, "the Sunset Island

condominium project would have been placed on the ineligible list, and individuals seeking to obtain mortgage financing to purchase a unit would have been denied financing." *Id.*

The Form 1076 returned to the originator for Plaintiffs' mortgage and provided to Plaintiffs' mortgage lender contained two false answers provided by Defendant. *Id.* ¶ 37. First, Defendant responded, "Unknown" to the question, "When was the last building inspection by a licensed architect, licensed engineer, or other building inspector?" *Id.* ¶ 37. Second, Defendant checked the box for "no" in response to the question, "Are there any planned special assessments that unit owners/cooperative shareholders will be obligated to pay?" *Id.* The form was prepared by Nicole Hazzard, Defendant's Resales Coordinator, on June 14, 2022. *Id.* Defendant did not mention the REI engineering report despite its knowledge of the report. *Id.* ¶ 38.

By May 2022, the only repairs that had been completed were the repairs to the stair tower. *Id.* ¶ 39. Plaintiffs allege that Defendant knew or should have known that the cost of the two remaining phases of repairs for GCII was in the range of $9.7 million based on an earlier construction bid. *Id.* Despite its knowledge of the latent defects in GCII and the required structural repairs, that information was not disclosed on the Form 1076 Defendant completed in connection with its mortgage underwriting requirements. *Id.* ¶ 40. The REI report was not attached to the form, and other relevant board meeting minutes and action plan were also omitted. *Id.*

The construction defects, water infiltration issues, and need for repairs were discussed at unit owner meetings attended by Defendant. *Id.* ¶ 41. A third special assessment was discussed at the quarterly meetings held on February 19, 2022, and April 9, 2022. *Id.* Defendant failed to disclose the known planned special assessment in the Form 1076 it completed on June 14, 2022. *Id.*

### 5. Resale Certificates

6

Maryland law requires a condominium unit owner to provide a buyer of a unit with a resale certificate no later than 15 days before closing, and "include key documents and important information concerning common expenses, fees, operating budget, capital expenditures, and reserves." *Id.* ¶ 43. The resale certificate must also disclose any building code violations involving common elements of the condominium. *Id.* Unit owners asked Defendant to prepare resale certificates. *Id.*

When purchasing their unit, Plaintiffs, but not their mortgage lender, were provided with the resale certificate signed by Nicole Hazzard and dated September 26, 2022. *Id.* ¶ 44. As relevant here, the resale certificate stated:

> While notice has not been received from any governmental authority or health or building code violation, building structural issues due to water infiltration and construction defects have been identified in the buildings, including the stair towers, balconies, and the building envelope. The Association, in consultation with an engineering firm, has assessed the extent of the remaining issues, developed a scope of work for the repairs and commenced work to address the identified issues.
>
> On September 24, 2019, the Council of Unit Owners Garden Condominium II at Sunset Island approved a $39,847 per Unit Special Assessment to pay for repairs to the condominium. The Special Assessment was payable in installments over 3 years. The last installment of the Special Assessment was due on January 5, 2022. Any unpaid balance of the Special Assessment, and any associated accrued interest, costs, and legal fees is due and payable upon the sale of the Unit.
>
> The Association approved repair and restoration projects to various components of the buildings, including the stair towers, balconies, and building envelope to address construction defects and water infiltration issues. The estimated cost to complete this work is $4,064,405.00. The contractor, on which the estimate was based, was terminated due to nonperformance. The Association contracted with a different contractor to complete Phase 1 of the repair and restoration work. Phase 1, which includes the repairs to the stair towers, is ongoing and is estimated to be completed in May 2022. Bids will be solicited to complete the next phase of the work. It is

> anticipated that the estimated cost to complete [all of the] work may
> increase beyond the estimate. Completion of the remaining phases
> is estimated to take 2 years from the commencement of the next
> phase. A copy of the engineer's report, the Phase 1 contract, and the
> scope of work is available upon request for the current owner.

*Id.* ¶ 45. Similar language appears in the resale certificates prepared by Defendant between January 1, 2022, and August 29, 2022. *Id.*

### 6. Third Special Assessment

Around February 23, 2023, about four months after Plaintiffs closed on their unit in GCII, GCII provided Plaintiffs with a notice of special meeting for the purpose of approving a special assessment. *Id.* ¶ 46. A $74,500 special assessment was proposed to be imposed against each unit, which was subsequently increased to $75,250. *Id.* The special assessment was approved by vote on May 13, 2023, and lump sum or initial installment payments were required to be paid by August 1, 2023. *Id.* ¶ 48.

Plaintiffs allege that had their mortgage lender received an accurate Form 1076, Plaintiffs would not have obtained financing and would not have closed on their unit. *Id.* ¶ 49. In January 2024, the Sunset Island Condominium project was placed on the Fannie Mae ineligible list. *Id.* ¶ 50. Since then, GCI and GCII have been classified as non-warrantable and are "blacklisted" until repairs are made. *Id.* Plaintiffs did not find out about Defendant's false and misleading response to Form 1076 until February 2024. *Id.* ¶ 51.

### B. Procedural Background

Plaintiffs filed their Complaint on February 29, 2024. ECF No. 1. The Complaint alleges one count of mortgage fraud under the MMFPA, *id.* ¶¶ 53–63, and one count of a violation of the MCPA, *id.* ¶¶ 64–75. Plaintiffs' mortgage fraud claim is based on alleged misrepresentations Defendant made in Form 1076, *see id.* ¶¶ 53–63, and failing to provide readily available information to answer questions pertaining to building safety, soundness, structural integrity, and

habitability in Form 1076 questions 2, 2a, 2b, 2c, 3, 3a, 3b, and 3c, *id.* ¶ 56. Their MCPA claim is based on allegations that Defendants engaged in unfair and/or deceptive trade practices in failing to disclose material facts, which misled or deceived Plaintiffs. *Id.* at 64–75.

Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 13, to which Plaintiffs responded in opposition, ECF No. 14, and Defendant replied, ECF No. 15. The parties then filed surreplies, for which leave shall be granted *nunc pro tunc*, ECF Nos. 16, 17, 18, 19, and 20.[1] Defendant's Motion to Dismiss is ripe for disposition.

## II.    STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of

---

[1] Surreplies are generally disfavored in this District, *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015), and are not permitted unless ordered by the court, Local Rule 105.2(a). Here, the Court finds the surreplies to have been helpful in clarifying the parties' arguments.

those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

If a claim alleges fraud, it is subject to the pleading requirements of Rule 9(b). This rule requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783

(4th Cir. 1999). This heightened standard requires a plaintiff to set forth, "at a minimum, . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison*, 176 F.3d at 784). Put simply, a plaintiff must plead the "who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citations omitted); *see also U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F.Supp.2d 840, 853 (D. Md. 2013); *Harden v. Budget Rent A Car Sys., Inc.*, 726 F. Supp. 3d 415, 426–27 (D. Md. 2024).

"But where a claim of fraud is based on an omission, meeting Rule 9(b)'s particularity requirement takes a different form." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 489 (D. Md. 2020) (citing *Lombel v. Flagstar Bank F.S.B.*, Civ. No. PWG-13-704, 2013 WL 5604543, at *6 (D. Md. Oct. 11, 2013)). "Rule 9(b) is 'less strictly applied with respect to claims of fraud by concealment' or omission of material facts, as opposed to affirmative misrepresentations, because 'an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Willis v. Bank of Am. Corp.*, Civ. No. ELH-13-02615, 2014 WL 3829520, at *8 (D. Md. Aug. 1, 2014) (quoting *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997)).

The purpose of Rule 9(b) is "to prevent frivolous suits, stop fraud actions where everything is learned after discovery (i.e., fishing expeditions), and to protect defendants' reputations." *U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022). Nevertheless, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare

a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* (internal quotation marks omitted) (quoting *Harrison*, 176 F.3d at 784).

## III.    COUNT I: THE MARYLAND MORTGAGE FRAUD PROTECTION ACT

### A.  Legal Background

Plaintiffs assert a claim under the MMFPA alleging that Defendants violated various sections of the statute by knowingly making, using, or facilitating the use of deliberate misstatements, misrepresentations, or omissions, with the intent to defraud, during the mortgage lending process, particularly in relation to Form 1076. Defendant argues that the MMFPA is inapplicable to Form 1076, Plaintiffs' mortgage lender is the only party with a duty to determine Fannie Mae eligibility, Defendant truthfully completed the resale certificate, Plaintiffs cannot state a claim under the MMFPA, and Plaintiffs fail to plead fraud or conspiracy with sufficient particularity.

The MMFPA prohibits "mortgage fraud." Md. Code Ann., Real Prop. § 7-402. The statute defines "mortgage fraud," in relevant part, as follows:

>(d)    "Mortgage fraud" means any action by a person made with the intent to defraud that involves:
>
>(1)    Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;
>
>(2)    Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

12

> (3)    Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process; [or]
>
> \* \* \*
>
> (5)    Conspiring to violate any of the [above provisions.]

*Id.* § 7-401(d)(1), (2), (3), and (5). The "mortgage lending process" is defined as follows:

> (e)(1)    "Mortgage lending process" means the process by which a person seeks or obtains a mortgage loan.
>
> (2)    "Mortgage lending process" includes:
>
>> (i)    The solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan; and
>>
>> (ii)    The notarizing of any document in connection with a mortgage loan.

*Id.* § 7-401(e).

The MMFPA provides a right of action "for damages incurred as the result of a violation of [the statute]." *Id.* § 7-406(a)(1). Generally, "[t]o state an MMFPA claim, the plaintiff 'must plead the elements of a common law fraud claim.'" *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (quoting *Galante v. Ocwen Loan Servicing LLC*, Civ. No. ELH-13-1939, 2014 WL 3616354, at *28 (D. Md. July 18, 2014)). *See also Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 653 (D. Md. 2023); *Castle v. Cap. One, N.A.*, Civ. No. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014), *aff'd sub nom. Castle v. Cap. One, Nat. Ass'n*, 593 F. App'x 223 (4th Cir. 2015); *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 530 (D. Md. 2013). To state a claim for fraud based on an affirmative misrepresentation under Maryland law, ordinarily, a plaintiff must allege:

    (1)    that the defendant made a false representation to the plaintiff;

    (2)    that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;

    (3)    that the misrepresentation was made for the purpose of defrauding the plaintiff;

    (4)    that the plaintiff relied on the misrepresentation and had the right to rely on it; and

    (5)    that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Ademiluyi*, 929 F. Supp. 2d at 530. To be actionable, the false representation "must be of a material fact," and the misrepresentation "must be made with the deliberate intent to deceive." *Id.* (citations omitted).

Further, under Maryland law, a failure to disclose a material fact does not ordinarily constitute fraud. *Id.* at 531. Instead, the alleged failure to disclose must ordinarily be accompanied by a legal duty to disclose. *Id.* When a fraudulent concealment claim is based on a duty to disclose, a plaintiff must allege that:

> "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment."

*Id.* (quoting *Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010)).

## B. Analysis

As a threshold issue, this Court must determine whether Plaintiffs can sue Defendant, a property management company, for mortgage fraud under the MMFPA. Defendant argues that Plaintiffs cannot state a claim against it under the MMFPA because Plaintiffs must establish the elements of a common-law cause of action for fraudulent misrepresentation and, here, Plaintiffs do not allege that they relied on any misrepresentations. ECF No. 15 at 1–2.  At first glance, this

proposition is supported by the case law cited above. However, each of those cases, and each case cited by Defendant for this proposition, relies on the Court's opinion in *Ademiluyi*. 929 F. Supp. 2d at 530. *Ademiluyi*, and all the cited cases that rely on it, are distinguishable from the instant case. The MMFPA claims in the instant case are founded upon the statutory language "relied on by a mortgage lender, borrower, or any other party to the mortgage lending process," and, unlike *Ademiluyi*, is not a straightforward application of common-law misrepresentation where the defendant defrauds the plaintiff. *See* Md. Code, Real Prop. Art. § 7-401(d)(1), (2), (3) and (5).

The Court in *Ademiluyi* discussed common-law fraud because "[t]he MMFPA does not define the terms 'misrepresentation' or 'omission,' as used in the statute." 929 F. Supp. 2d at 530. Because the statute did not define those terms, the Court looked to the common law to interpret what acts constituted a misrepresentation or omission. *Id.* at 530–31. None of the cases cited by Defendant involve reliance by the mortgage lender or any other party to the mortgage lending process other than the borrower. *See, e.g.*, *Bowman*, 704 F. Supp. 3d. at 653; *Ayres v. PHH Mortg. Corp. Successor to Ocwen Loan Servicing, LLC*, Civ. No. GLS-21-0934, 2022 WL 4316261, at *8 (D. Md. Sept. 19, 2022); *Barr*, 303 F. Supp 3d. at 417; *In re Blackston*, 557 B.R. 858, 873 (Bankr. D. Md. 2016); *Singletary v. Nationstar Mortg., LLC*, Civ. No. TDC-14-3204, 2016 WL 1089419, at *3 (D. Md. Mar. 21, 2016); *Lupo v. JPMorgan Chase Bank, N.A.*, Civ. No. DKC 14-0475, 2015 WL 5714641, at *12 (D. Md. Sept. 28, 2015); *Galante*, 2014 WL 3616354, at * 23; *Castle*, 2014 WL 176790, at *5.

The instant case is materially different. Here, a party other than the plaintiff relied on the defendant's misrepresentations or omissions, and did so to the detriment of the plaintiff. The relevant subsections of § 7-401(d) contemplate reliance by individuals other than the borrower, including reliance by the mortgage lender. Under the plain language of the statute, claims for

damages from mortgage fraud may be based on deliberate misrepresentations and omissions and false documents "relied on by a mortgage lender . . . or any other party to the mortgage lending process[,]" not just a borrower. *See* Md. Code, Real Prop. Art. § 7-401(d)(1), (2), and (3). And the statute permits any person who has "incurred damages as a result of a violation" to bring suit. *Id.* § 7-406(a)(1). *But see Singletary*, 2016 WL 1089419, at *3 (finding that plaintiffs could not state a claim under the MMFPA for defendant's fraud toward a third-party because "a necessary element of both common law fraud and mortgage fraud is that the *plaintiffs*, not a third party, relied upon the false statements of the defendant").[2]

The question then becomes whether Plaintiffs have pleaded violations of § 7-401(d)(1), (2), (3), or (5) with sufficient particularity.

### 1.    Section 7-401(d)(1) and (3)

Defendant argues that Plaintiffs' claims under subsections 7-401(d)(1) and (3) must be dismissed because Plaintiffs cannot show causation or that Defendant benefitted from the alleged fraud. Plaintiffs argue that they properly alleged causation and that the plain language of the MMFPA does not require the defendant receive a benefit.

These subsections of the MMFPA encompass deliberate misstatements, misrepresentations, or omissions made during the mortgage lending process. Md. Code, Real Prop. Art. § 7-401(d)(1) and (3). Specifically, under these two subsections, mortgage fraud is (1) "any

---

[2] *Singletary* is factually and legally distinguishable from the instant case. In *Singletary*, the plaintiffs were seeking damages for the defendant's alleged "fraud upon the court," where a state court was allegedly misled by the defendant's false affidavits in a foreclosure proceeding. 2016 WL 1089419, at *3. The Court held that the claim failed because "a necessary element of both common law fraud and mortgage fraud is that the *plaintiffs*, not a third party, relied upon the false statements of the defendant." *Id.* Importantly, in *Singletary*, there was no allegation that the defendant's allegedly false affidavits were made "during the mortgage lending process" or with the intent that a "party to the mortgage lending process" rely upon them, as required to present a mortgage fraud claim under § 7-401(d)(1), (2), or (3). Here, in contrast, Plaintiffs allege that Defendant completed the Form 1076 during the mortgage lending process.

action by a person made with the intent to defraud that involves" (2) knowingly making, using, or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process (3) "with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process[.]" *Id.* Here, Plaintiffs allege that Defendant knowingly made and used deliberate misrepresentations and omissions in Form 1076 with fraudulent intent during the mortgage lending process.

Plaintiffs sufficiently allege causation. Plaintiffs' lender relied on the Form 1076 Defendant completed, resulting in Plaintiffs' mortgage being approved and Plaintiffs incurring costs and losses that they otherwise would not have incurred. Compl. ¶¶ 46, 49, 50, 56–59. Defendant argues that it provided Plaintiffs with a truthful resale certificate and thereby notified Plaintiffs about planned special assessments. This argument misses the mark because Defendant did not provide the resale certificate to the mortgage lender; the mortgage lender only received the fraudulent information contained in Form 1076. Thus, Plaintiffs plausibly allege that Defendant caused, and intended for, the mortgage lender to rely on the fraudulent Form 1076 Defendant completed.

Further, the Court agrees with Plaintiffs that the plain language of the MMFPA does not require that the defendant receive a benefit from the alleged fraud for its conduct to constitute mortgage fraud under the statute. This Court declines to read any such requirement into the statute.

The facts in the Complaint are sufficiently specific to plead fraudulent conduct. Plaintiffs allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation . . . ." *Weidman*, 776 F.3d at 219. Because Plaintiffs sufficiently plead a claim under subsections 7-401(d)(1) and (3) in Count I, Defendant's motion to dismiss this claim shall be denied.

### 2.    Form 1076 and § 7-401(d)(2)

Mortgage fraud under § 7-401(d)(2) is "[k]nowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission" with the fraudulent intent that the document "be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process[.]" Md. Code, Real Prop. Art. § 7-401(d)(2). Defendant contends that Form 1076 is an optional document, not a required disclosure, and therefore is not an actionable "document" under § 7-401(d)(2). "Document" within the meaning of the MMFPA "*includes* applications, appraisal reports, HUD-1 settlement statements, W-2 forms, verifications of income or employment, bank statements, tax returns, payroll stubs, and any required disclosure." *Id.* § 7-401(b) (emphasis added). Thus, a wide range of documents commonly involved in the mortgage lending process are included within the definition of "document." Defining the term to *include* the list of items does not limit use of the term to that list. Contrary to Defendant's argument, Form 1076 need not be a "required disclosure" in order to constitute a "document" as contemplated in § 7-401(b) and § 7-401(d)(2). This Court finds that Form 1076 plausibly constitutes a "document" under the MMFPA. Here, Plaintiffs plausibly allege that the Form 1076 produced by Defendant contained false information and material omissions, and that Defendant acted knowingly and with fraudulent intent, intending for Plaintiffs' mortgage lender to rely upon the document. Therefore, Defendant's motion to dismiss as to Plaintiffs' § 7-401(d)(2) claim in Count I is denied.

### 3.    Conspiracy Under § 7-401(d)(5)

Defendant seeks dismissal of Plaintiffs' conspiracy claim under § 7-401(d)(5), arguing that the Complaint does not allege that Defendant conspired with any other entity and that it is legally impossible for Defendant to conspire with itself. ECF No. 13 at 7. Defendant further argues that

Plaintiffs fail to meet the Rule 9(b) pleading standard with respect to any mortgage fraud conspiracy claim under the MMFPA. ECF No. 17 at 11–12. Plaintiffs contend that Rule 9(b) does not apply to the MMFPA conspiracy claim. ECF No. 16-1 at 13. In Plaintiffs' opposition, they argue that there is a "reasonable inference" that Defendant did not act in isolation, "but reached agreement with HOA Board members and/or other interested advisers to avoid disclosing the longstanding need for structural repairs and the planned special assessment." ECF No. 14 at 23–24; Compl. ¶¶ 34, 59.

First, the Court finds that any claim of mortgage fraud conspiracy under § 7-401(d)(5) is subject to the heightened pleading requirement in Rule 9(b). As a cause of action sounding in fraud, a mortgage fraud conspiracy claim under § 7-401(d)(5), this Court finds, must satisfy the heightened pleading standard of Rule 9(b). Indeed, other courts, including the Fourth Circuit, have recognized that the Rule 9(b) standard applies to fraud conspiracy allegations. *See, e.g.*, *Connor v. Real Title Corp.*, 165 F.2d 291, 294 (4th Cir. 1947); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985); *Doe v. Mast*, 741 F. Supp. 3d 409, 468 (W.D. Va. 2024). Here, in failing to identify Defendant's alleged co-conspirators with any particularity, Plaintiffs' mortgage fraud conspiracy allegation falls short of Rule 9(b)'s pleading standard. Plaintiffs do not identify any person or entity with whom Defendant conspired to make any misrepresentation or omission, or present any false document, during the mortgage lending process. Further, Plaintiffs do not allege any fraudulent conduct by any party to support a reasonable inference of any conspiracy by Defendant to violate the MMFPA. Accordingly, Plaintiffs' mortgage fraud conspiracy claim under § 7-401(d)(5) shall be dismissed without prejudice.

## IV.    COUNT II: THE MARYLAND CONSUMER PROTECTION ACT

### A. Legal Background

Plaintiffs assert a claim under the MCPA alleging that Defendant's misrepresentations and omissions "infected" their purchase of the unit and that their implicit or indirect reliance satisfies the reliance requirement in the MCPA. Compl. ¶¶ 65–75. Defendant argues that Plaintiffs fail to state a claim for relief under the MCPA because Defendant notified Plaintiff about the structural deficiencies and special assessment before closing, Defendant offered to provide documents regarding the repair work, and Plaintiffs could not rely on Form 1076 when they purchased their unit because they did not know of its existence until after closing. ECF No. 13 at 8–10.

The MCPA prohibits any "unfair, abusive, or deceptive trade practice" in the marketing and sale of consumer goods. Md. Code Ann., Com. Law § 13-303. The MCPA defines "[u]nfair, abusive, or deceptive trade practices" to include:

> (1)    False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
>
> * * *
>
> (3)    Failure to state a material fact if the failure deceives or tends to deceive;
>
> * * *
>
> (9)    Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
>
> (i)    The promotion or sale of any consumer goods, consumer realty, or consumer service . . . .

Md. Code Ann., Com. Law § 13-301.

To state a claim under the MCPA, a plaintiff "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)); *see also Bank of Am., N.A. v. Jill. P. Mitchell Living Tr.*, 822 F. Supp. 2d, 505, 532 (D. Md. 2011) ("Consumers must prove that they relied on the misrepresentation [or deceptive practice] in question to prevail on a damages action under the MCPA.").[3]

### B.  Analysis

Here, Plaintiffs allege that Defendant engaged in an unfair or deceptive practice or misrepresentation by providing the mortgage lender, and therefore Fannie Mae, with false and/or misleading information about GCII, or by omitting material information regarding GCII, that was relied upon by Plaintiffs, their mortgage lender, and Fannie Mae, resulting in Plaintiffs purchasing a unit that they otherwise would not have purchased. Defendant argues that Plaintiffs could not have relied upon the Form 1076 when they purchased their unit because they did not even know it existed until February 2024.

The Supreme Court of Maryland has explained that entities other than the direct seller may engage in a deceptive trade practice: "It is quite possible that a deceptive trade practice committed by someone who is not the seller would so infect the sale or offer for sale to a consumer that the law would deem the practice to have been committed 'in' the sale or offer for sale." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 635–36 (Md. 1995) (citing cases). In *Hoffman v. Stamper*, the court applied that theory when it affirmed that a real estate appraiser could be liable

---

[3] The parties seem to agree that the only theory under Count II that sounds in fraud is the alleged violation of § 13-301(9). *See* ECF No. 13 at 8; ECF No. 14 at 26. *See also Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (applying Rule 9(b) pleading standard to MCPA claims). *Accord Prince v. Harbor Bank of Balt.*, Civ. No. MJM-23-2403, 2024 WL 3360658, at *4 (D. Md. July 9, 2024). This claim is therefore subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).

under the MCPA where his "erroneous and misleading appraisals directly 'infected' the sales at issue," because the plaintiffs would not have proceeded to closing absent the appraisals making the appraiser an integral part of the deceptive trade practice. 867 A.2d 276, 294–95 (Md. 2005).

The instant case is analogous to *Hoffman*. Defendant's alleged failure to provide the mortgage lender with correct information about the condition of GCII resulted in Plaintiffs' mortgage being issued under false pretenses, which in turn, injured Plaintiffs. Because Plaintiffs would not have purchased their unit if the mortgage had not been approved and thereby relied on the mortgage approval, Defendant's alleged wrongdoing directly and impermissibly "infected" the sale. *See id.*

Defendant's other arguments for dismissal are unconvincing. As with the MMFPA claim, it is immaterial that Defendant issued the resale notice and offered to disclose other information to Plaintiffs because Plaintiffs have plausibly alleged that their injuries were caused by Defendant's misrepresentations to the mortgage lender.

Because Plaintiffs state a plausible claim under the MCPA, Defendant's Motion to Dismiss as to Count II shall be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motions for Leave to File Surreplies, ECF Nos. 16, 18, will be GRANTED, and Defendant's Motion to Dismiss, ECF No. 13, will be GRANTED in part and DENIED in part. Plaintiffs' claim under §7-401(d)(5) in Count I shall be dismissed without prejudice. In all other respects, Defendants' Motion to Dismiss shall be denied.

A separate Order will follow.

DATE: 3/31/25

_____  /S/

Matthew J. Maddox
United States District Judge

22